Case 2:21-cv-00295 Document 26 Filed on 08/16/22 in TXSD Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
August 16, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ABELARDO G. GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00295 |
| | § | |
| CANDACE R MOORE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Abelardo G. Gonzalez, TDCJ #01622682, a Texas inmate appearing *pro se* has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For purposes of screening, the undersigned recommends that Plaintiff's claims be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

## I.   JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently housed at the Powledge Unit in Palestine, Texas. The facts giving rise to Plaintiff's claims in this lawsuit occurred during his assignment to the McConnell Unit in Beeville, Texas.

On December 13, 2021, Plaintiff filed his original complaint against the following individuals: (1) Candace R. Moore, Law Librarian; (2) Megan R. Thompson; (3) Adrian Chaves; (4) John Doe; and (5) Jane Doe. Plaintiff's application to proceed *in forma pauperis* was denied because Plaintiff is a "three strikes"[1] litigant under the provisions of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g). (D.E. 9). However, on February 8, 2022, Plaintiff paid the $402.00 filing fee, and this case was reinstated on February 9, 2022. (D.E. 11).

A *Spears*[2] hearing was conducted on May 2, 2022. The following representations were made either at the *Spears* hearing, in Plaintiff's complaint form (D.E. 1), or in his supplement (D.E. 1-1):

Plaintiff is currently serving a thirty-year sentence having been convicted and sentenced in Webb County, Texas on January 15, 2010. Plaintiff is an active *pro se* inmate litigator. Plaintiff lists some of his cases in a separately filed affidavit. (D.E. 4). As noted above, Plaintiff has had at least three prior actions or appeals dismissed as frivolous or for failure to state a claim

---

[1] The three strikes rule provides that a prisoner who has had, while incarcerated, three or more actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted is prohibited from bringing any more actions or appeals *in forma pauperis.* 28 U.S.C. § 1915(g); *Baños v. O'Guin,* 144 F.3d 883, 884 (5th Cir. 1998) (per curiam); *Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996).

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

for relief. *See Gonzalez v. Sarabia*, No. 3:14-cv-366 (S.D. Tex. Feb. 9, 2017); *Gonzalez v. Taylor*, No. 2:15-cv-46 (S.D. Tex. Jan. 5, 2016); *Gonzalez v. Taylor*, Appeal No. 16-40061 (5th Cir. May 30, 2017); *Gonzalez v. DeGollado*, No. 5:20-cv-30 (S.D. Tex. Nov. 29, 2021).

Plaintiff has been transferred to different TDCJ facilities during his incarceration, but he arrived at the McConnell Unit in Beeville, Texas in approximately 2015 or 2016. Plaintiff's allegations in the instant case arise out of incidents that occurred in the McConnell Unit. Plaintiff spent a lot of time working on his cases in the McConnell Unit law library. Generally, in the present case, Plaintiff alleges he was scratched by a cat in the McConnell Unit law library and that after filing a grievance he was subjected to various forms of retaliation by the defendants.

On September 9, 2020, in connection with *Abelardo Gonzalez v. Webb County Texas*, Case No. 5:20-cv-0052 (S.D. Tex. filed April 6, 2020), Plaintiff executed a subpoena against Defendant Candace R. Moore, as the Law Librarian and custodian of records for the McConnell Unit. Plaintiff had another offender serve her in person with the subpoena. On September 15, 2020, Plaintiff was scratched on his left arm by a cat in the McConnell Unit law library. Defendant Megan R. Thompson, a correctional officer, was present when the scratch occurred. The cat frequented the law library for approximately a month and a half. The cat was later removed from the facility. (D.E. 24, Page 23). Plaintiff was seen at the unit medical department after being scratched. Plaintiff alleges the scratch became infected, however, he testified at the *Spears* hearing that the scratch has healed and he suffered no permanent injury. (D.E. 24, Page 25). Plaintiff complained to various McConnell Unit officials about the incident and eventually filed a series of grievances that were denied as either time barred or because Plaintiff did not report an injury.

In the present action, Plaintiff alleges he has been subject to various forms of retaliation because of his complaints about the cat and because he served Defendant Moore with a subpoena. The instances of alleged retaliation include: (1) Moore telling other inmates Plaintiff complained about the cat in the library; (2) Moore denying Plaintiff the ability to appear for two court settings by video[3] in October 2020; (3) Moore not informing Plaintiff about an attorney telephone call in March 2021; (4) Thompson denying Plaintiff entry into the dining facility with legal mail in May 2021; (5) Thompson and Moore denying Plaintiff notary services in connection with real property transactions on two occasions in September 2021; (6) not arranging for Plaintiff to attend a previously scheduled attorney telephone call in October 2021; and (7) arranging for Plaintiff to be transferred from the McConnell Unit.[4]

Additionally, Plaintiff alleges deliberate indifference and a state law claim for negligence against all defendants for failing to protect him from being scratched by the cat.

During the *Spears* hearing, Plaintiff testified he also named the Doe defendants in case he learned of additional defendants during the discovery process. (D.E. 24, Page 34).

Plaintiff references his claims as "counts." In Count One, Plaintiff alleges a state tort claim for gross negligence. (D.E. 1-1, Page 18). In Count Two, Plaintiff alleges a First Amendment Retaliation claim under 42 U.S.C. § 1983. In Count Three, Plaintiff seeks various injunctive relief in connection with his previously-stated claims. (D.E. 1-1, Page 25).

---

[3] Plaintiff appeared for the court settings by telephone.

[4] Part of Plaintiff's retaliatory transfer claim is that he was transferred to the TDCJ Joe Ney Unit in Hondo, Texas. According to Plaintiff, the Joe Ney Unit is a more dangerous facility than the McConnell Unit. However, at the time of the *Spears* hearing on May 2, 2022, Plaintiff testified he had been transferred to the TDCJ's Pollard Unit. (D.E. 24, Page 14). The Court's docket and the TDCJ Inmate Locator indicate Plaintiff is currently incarcerated at the Powledge Unit in Palestine, Texas. *See* https://inmate.tdcj.texas.gov/InmateSearch

Plaintiff also states in his Prisoner Civil Rights Complaint Form that he is seeking declaratory, injunctive, and monetary relief. (D.E. 1, Page 4).

## III.   LEGAL STANDARD

In any civil action in which a prison seeks redress from an employee of a governmental entity, the Court is required to screen the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that

Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

## IV. DISCUSSION

### A. Eleventh Amendment Immunity

To the extent that Plaintiff alleges claims against TDCJ officers or employees of the State of Texas, those claims should be dismissed based on the Eleventh Amendment (D.E. 1, p. 18). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state…." Const. Amend. XI. This withdrawal of jurisdiction effectively confers immunity from suit. *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 144 (1993). When a plaintiff files suit against state officials in their official capacities, the lawsuit is effectively one against the State. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). That is, a claim for monetary damages against a state official in his or her official capacity is "no different from a suit against the state itself," and consequently, is barred by the Eleventh Amendment.[5] *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). *See also McKinley v. Abbott,* 643 F.3d 403, 406 (5th Cir. 2011)("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself.").

---

[5] The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 159 (1908) (establishing exception to Eleventh Amendment immunity in cases where the alleged constitutional violation is caused by a state official's actions or refusal to act within the authority of his or her office). However, to the extent Plaintiff sought injunctive relief against the McConnell Unit Defendants in this case, Plaintiff has failed to allege a non-frivolous claim for the reasons set forth below.

The Fifth Circuit has repeatedly held that the Eleventh Amendment bars claims for money damages against TDCJ officers in their official capacities. *See e.g., Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

Accordingly, it is respectfully recommended that Plaintiff's claims for money damages against Defendants Moore, Thompson and John and Jane Doe in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment.

### B. Deliberate Indifference

While not clearly raised by Plaintiff or stated as one of his counts, his allegations involving being scratched by a cat could be liberally construed as a claim that officials acted with deliberate indifference to his health and well-being. Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S.

97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)). A claim for deliberate indifference requires an injury resulting in substantial harm to the plaintiff. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

Plaintiff's claims of being scratched by a cat do not amount to deliberate indifference. Even accepting his claim that the scratch was serious and became infected, Plaintiff was seen by McConnell Unit medical personnel and his scratch has completely healed. Further, there are no alleged facts that the cat was known to be dangerous, had attacked other inmates, or is still present within the facility. As alleged by Plaintiff, a single incident of an inmate being scratched by a cat (wild or domesticated) with no resulting serious injury does not state a claim for deliberate indifference.

### C. Access to Courts

Plaintiff does not specifically allege as a "count" that he has been denied access to the courts, however, his complaint could be construed as raising that claim. Plaintiff alleges Defendants prevented him from appearing by video at various civil court proceedings. Plaintiff claims he has a First Amendment right to appear by video. He alleges he was denied this right when he was only allowed to appear by telephone from the McConnell Unit law library. Plaintiff also alleges he was transferred from the McConnell Unit to a TDCJ facility that does not have a law library.

Prisoners have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones*, 188 F.3d at 325 (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).

Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349.

To meet the standing requirement, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

9 / 18

*Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him." *Id.* at 819. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis*, 518 U.S. at 356. He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

During the *Spears* hearing, the undersigned gave Plaintiff an opportunity to explain how he has been harmed in connection with being denied access to the courts. Plaintiff's only alleged harm was that he was forced to "settle out" one of his cases because he was unable to research what his court-appointed attorney filed on his behalf. (D.E. 24, Page 19). The inability of an inmate who is represented by counsel to conduct his own legal research in a civil action is not the type of injury which infringes on his constitutionally protected right of access to the courts. Additionally, while the undersigned prefers in-person court settings in civil actions, and video settings when in-person settings are not practicable, the undersigned frequently conducts certain proceedings by telephone in civil actions when necessary. The decision of the judge to conduct proceedings by telephone in one or more of Plaintiff's other civil actions does not state a claim for denial of access to the courts in this action.

To the extent Plaintiff's complaint may be construed as raising a claim that he has been denied access to the courts, the undersigned recommends that claim be dismissed.

### D. Count One – Negligence

In Plaintiff's Count One, he alleges state law negligence claims against all of the Defendants in connection with the cat-scratching incident. Section 101.1016(f) of the Texas Tort Claims Act (TTCA) provides that if a suit is filed against an employee of a government unit based upon conduct within the general scope of that employee's employment, and if it could have been brought against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. Tex. Civ. Prac. & Rem. Code § 101.106(f); *Franka v. Velasquez,* 332 S.W.3d 367, 369-85 (Tex. 2011). The Act does not provide for recovery against individuals employed by the state. *Aguilar v. Chastain*, 923 S.W.2d 740, 744 (Tex. App.—Tyler 1996, writ denied).

In *Franka,* the Texas Supreme Court explained that § 101.106(f) was intended to "foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment." *Franka,* 332 S.W.3d at 381. In waiving governmental immunity for governmental units, "the Legislature correspondingly sought to discourage or prevent recovery against an employee." *Id.* at 384. Pursuant to *Franka,* all tort claims, including intentional tort claims against individual government actors, "could have been brought" against the relevant governmental unit, regardless of whether its own immunities might ultimately bar the claim. Thus, Plaintiff's state law tort claims against Moore and Thompson are barred, and can be dismissed. *See Huff v. Refugio County Sheriff's Dep't*, No. 6:13-CV-00032, 2013 WL 5574901, at *3-4 (S.D. Tex. Oct. 9. 2013) (J. Costa) (applying *Franka* rule to dismiss prisoner's intentional tort claims against jailers for assault and battery). *See also Harrell v. Majefski*, No. 13-19-00566-CV, 2020 WL 3786246, at *3 (Tex. App.—Corpus Christi–Edinburg July 2, 2020, no pet.)

(Pursuant to the TTCA, inmate's negligence claim against state correctional officer had no arguable basis in law and was properly dismissed).

Additionally, with regard to Plaintiff's negligence claim against inmate Chavez or the Doe defendants, Plaintiff has failed to state a viable claim. To sustain a negligence action, a plaintiff must establish a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex. 1998). Plaintiff fails to allege any duty inmate Chavez had to Plaintiff in connection with the cat-scratching incident. Additionally, while Plaintiff lists the Doe defendants in his negligence claim (D.E. 1, Page 3), he states no facts that there were unidentified persons responsible for the occurrence in question.

Even liberally construing Plaintiff's negligence claims against any of the defendants, he fails to state a claim upon which relief can be granted. A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citations omitted). Plaintiff has not alleged a sufficient factual or legal basis for any of the defendants to be liable to Plaintiff under a state law negligence theory.

However, if the Court does not wish to dismiss Plaintiff's state law claims with prejudice, the Court may alternatively decline to exercise supplemental jurisdiction over these claims and dismiss them without prejudice. Federal courts may, under limited circumstances, exercise jurisdiction over state law claims. 28 U.S.C. § 1367(a) provides:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

While under § 1367(a) a district court properly exercises supplemental jurisdiction over state law claims that are part of the same case or controversy over which the district court has original jurisdiction, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction." District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed. *Noble v. White,* 996 F.2d 797, 799 (5th Cir. 1993). When all federal claims are dismissed or otherwise eliminated from a case prior to trial, the general rule in the Fifth Circuit is to decline to exercise supplemental jurisdiction over the remaining state law claims. *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir. 1989). Therefore, if the Court adopts this memorandum and recommendation dismissing Plaintiff's federal claims, the Court may either dismiss Plaintiff's state law claims with prejudice pursuant to *Franka* or the Court may decline to exercise supplemental jurisdiction and dismiss the state law claims without prejudice.

13 / 18

### E.  Count Two – Retaliation

Plaintiff claims Defendants engaged in harassment and retaliatory acts against him.  The instances of alleged retaliation include: (1) Moore telling other inmates Plaintiff complained about the cat in the library; (2) Moore denying Plaintiff the ability to appear for two court settings by video in October 2020; (3) Moore not informing Plaintiff about an attorney telephone call in March 2021; (4) Thompson denying Plaintiff entry into the dining facility with legal mail in May 2021; (5) Thompson and Moore denying Plaintiff notary services in connection with real property transactions on two occasions in September 2021; (6) not arranging for Plaintiff to attend a previously scheduled attorney telephone call in October 2021; and (7) arranging for Plaintiff to be transferred from the McConnell Unit.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).  Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris*, 449 F.3d at 686.  Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities,

and prison officials may not retaliate against inmates for engaging in such protected activities." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

As discussed above, "the invocation of a specific constitutional right is the first element of a retaliation claim." *Williams v. Sellers*, No. H-11-4287, 2014 WL 794191, at *11 (S.D. Tex. Feb. 26, 2014). The undersigned recognizes Plaintiff's right to file grievances, to complain about conditions of confinement or misconduct of correctional officers and to access the Courts. However, the incidents of alleged retaliation in this case are more likely attributed to the daily inconveniences of being incarcerated and due to the challenges of managing a prison. Inmates appearing for civil court proceedings by telephone, missing an occasional appointment or

telephone conference, not having access to notary services, or being denied access to the dining facility on a single occasion are the types of incidents that are not unexpected in a penal institution. Plaintiff's allegations of retaliation do not amount to the type of serious retaliatory behavior that would risk chilling the exercise of his rights. The alleged instances of retaliation in the instant case are so *de minimis* they do not give rise to a claim for retaliation.

Plaintiff also alleges his transfer from the McConnell Unit was retaliatory. Plaintiff claims he was transferred to the Joe Ney Unit in Hondo, Texas, which he explains, "is a clearly more dangerous prison" and that "he remains in imminent danger of serious bodily injury." (D.E. 1-1, Page 54). As noted above, Plaintiff was only temporary housed in the Joe Ney Unit and is no longer housed at that unit. Plaintiff's complaints about being transferred to a more dangerous facility for retaliatory purposes are conclusory and moot.

Additionally, an inmate does not have a constitutional right to be incarcerated in the prison of his choice. *Meachum v. Fano*, 427 U.S. 214, 224 (1976). "A prisoner has no constitutionally protected interest in a particular facility." *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). A criminal conviction under the laws of the State "sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons ... [t]hat life in one prison is much more disagreeable than another does not in itself signify that [a liberty interest] is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum*, 427 U.S. at 224-25 (emphasis in original).

Plaintiff has alleged an unsupported belief that he was subjected to retaliation. His complaints of retaliation are wholly conclusory. Plaintiff has failed to allege sufficient facts to

draw an inference that any of alleged retaliation was an intentional act brought on or caused by Plaintiff exercising any right.

For the reasons stated above, the undersigned recommends Plaintiff's claims of retaliation be dismissed with prejudice.

### F. Count Three – Injunctive Relief

Plaintiff's claims for injunctive relief are set forth in Count Three of the supplement to his complaint. (D.E. 1-1, Page 25). His claims for injunctive relief are premised on Plaintiff obtaining a favorable judgment on his underlying claims. The undersigned recommends Plaintiff's claims for injunctive relief be dismissed because, as stated above, Plaintiff has not stated any viable cause of action on which injunctive relief could be granted.

## V. CONCLUSION

For the foregoing reasons, it is respectfully recommended that all of Plaintiff's claims be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

Respectfully submitted on August 16, 2022.

_____
Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).